SHEPHERD, J.
This is an appeal by James Warmington from his conviction for grand theft of a sum of money greater than $20,000 but less than $100,000. Warmington asserts two grounds for reversal: (1) that the investigating officer’s testimony, given over defense objection, that Warmington told the officer, just before he was arrested, he could not provide any documentation to support his position that the money owed was a loan rather than a theft, constituted improper burden shifting on the part of the prosecution; and (2) prosecutorial mis *1189 conduct during closing argument. Finding no merit in either point raised, we affirm the conviction.
Taking the facts in the light most favorable to the State, the State established that Christine Pistol, who had been a student in Warmingtoris real estate class, and her husband, Robert Pistol, approached Warmington, expressing a desire to invest in mortgages. Warmington responded that a friend, Rene Sardina, was interested in borrowing money, secured by a second mortgage on a piece of property he desired to purchase. According to Warmington, Sardina’s credit was such that he could not qualify for a second mortgage loan in the marketplace and, therefore, was willing to pay a higher-than-market, nine-percent interest rate on the mortgage. Warmington functioned as the middleman for the transaction.
On September 10, 2002, the Pistols and Sardina met Warmington and his wife at the Warmingtons’ house for the purpose of closing the transaction. The closing documents, including a promissory note and mortgage, were prepared by Warmington. The Pistols brought two $75,000 checks, representing the loan amount. After Sar-dina signed the promissory note and mortgage, all of the parties travelled together to Warmingtoris bank, where his wife deposited the two checks into the Warming-tons’ personal bank account. Robert Pistol testified that given Warmingtoris role in the transaction as the middleman, he did not find anything suspicious about the fact the money was deposited into the Warmingtons’ bank account.
The Pistols received payments on the loan from October 2002 through 2005. Payments were made from Warmingtoris bank account. When the Pistols stopped receiving payments, they contacted Sardi-na, who stated he never received the $150,000, and was told by Warmington the deal fell through. Warmington testified the mortgage deal fell through, but the Pistols agreed to continue the transaction as a personal loan to Sardina, upon which Sardina simply had defaulted.
Detective Abolsky was assigned as the lead detective to the criminal case, precipitated by the Pistols’ complaint to the authorities after the payments to them ceased. After interviewing the Pistols and Sardina, Detective Abolsky approached Warmington and obtained an interview. Detective Abolsky testified:
[Prosecutor]: When you interviewed Mr. Warmington, how far [sic] is it that it came about?
[Detective]: Well, what I believed to be the complete case file, I went to his home to visit with him.
[Prosecutor]: What [wa]s the purpose of your visit?
[Detective]: The purpose of my visit was to allow him to dispel any alarms that I may have or concerns that he did anything wrong.
[Prosecutor]: And was he able to do that?
[Defense Counsel]: Objection. Burden shifting.
The Court: Sustained.
[Defense Counsel]: We have a motion to object, Judge.
The Court: Yes.
[Prosecutor]: When you went and spoke to him, what was the extent of your investigation?
[Detective]: I advised him of the nature of the investigation. We spoke outside his residence. I began explaining to him what the allegations were and I offered him an opportunity to—
[Defense Counsel]: Objection.
The Court: Sustained.
[Prosecutor]: Your Honor.
*1190 The Court: Continue on.
[Prosecutor]: And what was the result of that conversation?
[Detective]: Well, Mr. Warmington had indicated to me that a loan had been funded to Mr. Rene Sardina and that Mr. Sardina was no longer paying on the loan. The loan was comprised basically [of] a mortgage or something and as a result he had explained this to the Pistols and subsequently it was a matter he was trying to take care of.
[Prosecutor]: Was the defendant able to produce any documentation?
[Defense Counsel]: Objection. Burden shifting. We reserve—
The Court: Overruled.
[Prosecution]: Was there documentation that day with regards to this explanation he gave you?
[Detective]: No, in fact, he represented that his home was also his office. And when I asked for him to provide any documentation, he couldn’t.
[Defense Counsel]: Objection
The Court [sic]: Same objection as previously noted. We reserve the motion.
The Court: Continued objection. Go ahead.
[Prosecution]: When you had that conversation with Mr. Warmington, what happened?
[Detective]: I placed him under arrest.
At the conclusion of Detective Abolsky’s testimony, Warmington moved for a mistrial, arguing the State improperly shifted the burden of proof to Warmington. The trial judge denied the motion, finding the State did not shift the burden. Warming-ton argues on appeal the trial judge abused his discretion in denying the motion. We disagree.
Burden shifting occurs when the State “invite[s] the jury to convict the defendant for some reason other than that the State has proved its case beyond a reasonable doubt.” Gore v. State, 719 So.2d 1197, 1200 (Fla.1998). An investigating officer’s testimony concerning what he saw, observed, or discovered during the course of his investigation does not shift the burden of proof. It is evidence. In this case, the investigating officer discovered that Warmington did not have copies of certain mortgage documents signed by Sardina at the closing of the transaction at his home. The testimony may or may not have been significant; one might argue that Warmington, who, after all, merely was the middleman in the transaction, would have no need to have a set of the mortgage documents. On the other hand, the fact certainly was material for the jury to hear.[1]
The defense places its primary reliance on a line of cases where a prosecutor’s questioning at trial resulted in the burden at trial being less than it should be, where the jury is left with the impression that a defendant had an obligation to produce evidence of his innocence at trial, or when the burden at trial, is less than reasonable doubt. For example, in Hayes v. State, 660 So.2d 257 (Fla.1995), heavily relied upon by the defense, the Florida Supreme Court found that testimony elicited by the prosecution at trial that the defense had not asked a crime laboratory to test blood stains and added that the lab had complied with such requests in the past for other *1191 defense attorneys constituted improper burden shifting. See id. at 265 (citing Jackson v. State, 575 So.2d 181, 188 (Fla.1991) (reversing a conviction where the prosecutor commented on the defendant’s failure to call a particular witness to testify)).
In Ramirez v. State, 1 So.3d 388 (Fla. 4th DCA 2009), also cited by the defendant, Ramirez was charged with battery on a law enforcement officer during the course of the booking process into the local jail. Id. at 384. Law enforcement personnel testified they physically subdued Ramirez and then took her to be seen by medical personnel and photographed, in accordance with jail protocol in such circumstances. The pictures taken by the medical personnel were admitted into evidence. On cross-examination, the State asked the defendant whether she had been injured. When she replied in the affirmative, the State asked, “Did you take any pictures of your injuries?” Id. at 385. Defense counsel’s objection on the ground of burden shifting was overruled, and Ramirez testified that she did, but they came out too “light,” so she did not bring them to trial. Id. The prosecutor continued:
Q. So you don’t have any pictures here with you?
A. Well, here at this moment, no.
Q. In fact, the only pictures that we have is a picture taken by Sergeant Acosta which showed no injury; is that correct?
Id. Defense counsel again objected. After a bench conference, the prosecutor restated the question as follows:
Q. Did you ask anyone at the jail to take a closer picture of you that would show your injuries?
A. No.
Id. The State also asked whether she had any doctor’s reports or other information to document her injuries.
On appeal, the Fourth District Court of Appeal reversed and remanded the case for a new trial, reasoning the trial court abused its discretion when it allowed the State to shift the burden to the defendant through questions and comments that implied the defendant should have produced photographic evidence and medical reports “to refute an element of the crime” — the physical touching or the battery. Id. In the case before us, possession by Warm-ington (or lack thereof) of the mortgage documents is not an element of the crime. The historical fact that Warmington did not have a set of the documents could as well come through a search pursuant to a warrant. We are unable to find any legal misstep in the trial court permitting the same result through admission into evidence of a voluntarily made statement by the defendant.
Miele v. State, 875 So.2d 812 (Fla. 2d DCA 2004), the third case cited by Warmington for reversal, also affords Warmington no succor. This case involves impermissible comments by the State on a defendant’s failure to present evidence, but this time through the trial testimony of Miele’s sister and his former girlfriend. Id. at 814. Miele had been charged with burglary of a dwelling from which he was alleged to have taken a stash of two dollar bills from a five-gallon jug. Id. at 813. Miele’s defense was that the money came not from a jug in the burgled house, but rather from a jug at his father’s house. Id. at 814. On cross-examination by the State, the girlfriend was asked, over defense objection, whether Miele’s father was present in the courthouse. Miele’s sister was asked whether she had a camera, and whether she had taken pictures of her father’s jug *1192 money. She testified she took some, coincidentally after Miele asserted the alternate source of the money to police, but that she gave them to her father. Id. The Second District Court of Appeal reversed Miele’s conviction on the ground that the line of questioning was a comment on Miele’s failure to produce photographs of his father’s money jug. Id. Our case is readily distinguishable from Miele, again on the ground that Detective Abolsky was testifying as to historical fact.
Finally, we are not moved by the fact Warmington was arrested immediately after he told Detective Abolsky he did not have a copy of the mortgage documents. This again is a matter of historical fact. The testimony, taken as a whole, was prejudicial to Warmington. However, all defendants are arrested at some point, and the fact of arrest regularly makes its way into testimony at trial. The State at all times had the burden to prove the case against Warmington beyond a reasonable doubt. We do not believe this burden was lessened by Detective Abolsky’s testimony.
In his second point on appeal, Warmington asserts the trial court abused its discretion in not granting a mistrial when, during the course of her review of the evidence, the prosecutor argued, “Now, one of the tools used to confuse you ...” Assuming the defense properly preserved the point through the single word, “objection,” we conclude this single statement — even if directed at defense counsel, as appellant argues to us — was not so egregious or inflammatory in the context of the entire final argument made by the prosecutor to affect the fairness of the trial. See Del Rio v. State, 732 So.2d 1100, 1102 (Fla. 3d DCA 1999).
Affirmed.
SUAREZ, J., concurs.

. Warmington seeks to analogize the testimony in this case to a defendant's pre-arrest refusal to respond to an investigator’s inquiry concerning whether the defendant committed the crime. That question, of course, raises a different concern. See U.S. Const, amend. V. The inquiry made in this case is no different than an officer's testimony of the inability of a defendant to produce his registration during the course of an investigatory stop.