# Supreme Court of Florida

_____

No. SC12-1050
_____

**JAMES WARMINGTON,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

[October 16, 2014]

PARIENTE, J.

The conflict issue in this case concerns whether testimony elicited by the State during a criminal trial involving a defendant's failure to produce exculpatory evidence impermissibly shifted the burden of proof from the State to the defendant. In Warmington v. State, 86 So. 3d 1188, 1192 (Fla. 3d DCA 2012), the Third District Court of Appeal held that such testimony did not shift the burden of proof because the testimony consisted only of "historical fact[s]" and involved actions taken by the defendant prior to trial. We have jurisdiction on the basis that the Third District's decision expressly and directly conflicts with this Court's decision in Hayes v. State, 660 So. 2d 257 (Fla. 1995); the Fourth District Court of Appeal's

decision in <u>Ramirez v. State</u>, 1 So. 3d 383 (Fla. 4th DCA 2009); and the Second

District Court of Appeal's decision in <u>Miele v. State</u>, 875 So. 2d 812 (Fla. 2d DCA

2004), each of which held that similar testimony constituted impermissible burden

shifting.  <u>See</u> art. V, § 3(b)(3), Fla. Const.

We conclude that the State's questioning of the lead detective assigned to

investigate the defendant's case constituted impermissible burden shifting because

the testimony commented on the defendant's failure to produce exculpatory

evidence, which he had no legal duty to produce.  We further determine that this

error was not harmless beyond a reasonable doubt.  Accordingly, we quash the

Third District's decision in <u>Warmington</u>, which is contrary to our decision in

<u>Hayes</u>; approve the decisions of the Fourth District in <u>Ramirez</u> and the Second

District in <u>Miele</u>; and remand this case for a new trial.

## BACKGROUND

The State charged the defendant, James Warmington, with first-degree theft

of an amount greater than $100,000.  This charge arose from a business investment

deal between Warmington and three other individuals—Robert Pistol, Christine

Pistol, and Rene Sardina.  While the existence of the deal was not disputed, the

terms and nature of the investment deal were contested.

At trial, the State asserted that Warmington agreed to act as an intermediary

between the Pistols and Sardina, facilitating the execution of a private mortgage

- 2 -

agreement between the parties, but that Warmington subsequently stole the money that the Pistols intended to loan to Sardina. Conversely, Warmington argued that the Pistols made an unsecured personal loan to Warmington and Sardina jointly, which was not secured by real property, and although Warmington failed to repay this unsecured loan, this failure did not constitute theft.

During trial, the State called Detective Stuart Abolsky, a detective with the Miami-Dade Police Department's Economic Crimes Bureau who was assigned to investigate Warmington's case. Detective Abolsky testified that after contacting the Pistols and Sardina, he interviewed Warmington at his home. At trial, when inquiring about Detective Abolsky's interview with Warmington, the State elicited testimony that Warmington contends impermissibly shifted the burden of proof. This portion of the record provides as follows:

> [Prosecutor]: Did you interview anyone else as a result of this investigation?
> [Detective Abolsky]: Mr. Warmington.
> [Prosecutor]: When you interviewed Mr. Warmington, how far [sic] is it that it came about?
> [Detective Abolsky]: Well, what I believed to be the complete case file [sic], I went to his home to visit with him.
> [Prosecutor]: What [was] the purpose of your visit?
> [Detective Abolsky]: The purpose of my visit was to allow him to dispel any alarms that I may have or concerns that he did anything wrong.
> [Prosecutor]: And was he able to do that?
> [Defense Counsel]: Objection. Burden shifting.
> THE COURT: Sustained.
> [Defense Counsel]: We have a motion to object, Judge.
> THE COURT: Yes.

[Prosecutor]: When you went and spoke to him, what was the extent of your investigation?

[Detective Abolsky]: I advised him of the nature of the investigation. We spoke outside his residence. I began explaining to him what the allegations were and I offered him an opportunity to—

[Defense Counsel]: Objection.

THE COURT: Sustained.

[Prosecutor]: Your Honor.

THE COURT: Continue on.

[Prosecutor]: And what was the result of that conversation?

[Detective Abolsky]: Well, Mr. Warmington had indicated to me that a loan had been funded to Mr. Rene Sardina and that Mr. Sardina was no longer paying on the loan. The loan was comprised [sic] basically a mortgage or something and as a result he had explained this to the Pistols and subsequently it was a matter he was trying to take care of.

[Prosecutor]: Was the defendant able to produce any documentation?

[Defense Counsel]: Objection. Burden shifting. We reserve—

THE COURT: Overruled.

[Prosecutor]: Was there documentation that day with regards to this explanation he gave you?

[Detective Abolsky]: No, in fact, he represented that his home was also his office. And when I asked for him to provide any documentation, he couldn't.

[Defense Counsel]: Objection.

THE COURT: Same objection as previously noted. We reserve the motion.[1]

THE COURT: Continued objection. Go ahead.

[Prosecutor]: When you had that conversation with Mr. Warmington, what happened?

[Detective Abolsky]: I placed him under arrest.

[Prosecutor]: Thank you, Judge. No further questions.

---

1. Although the trial record indicates that the court made this statement, it appears that this statement was erroneously attributed to the court and, based on the content, was actually made by defense counsel.

Later, outside the presence of the jury, defense counsel made a motion for mistrial, alleging that burden shifting occurred during Detective Abolsky's testimony. The trial court denied the motion for mistrial, stating that the testimony elicited from the detective did not constitute burden shifting.

After the close of evidence, the jury returned a verdict, finding Warmington guilty of the lesser-included crime of theft of an amount greater than $20,000 but less than $100,000. The trial court sentenced Warmington to two years of community control, followed by ten years' probation, and payment of restitution to the victims.

On appeal, the Third District affirmed Warmington's conviction, rejecting his argument that the trial court abused its discretion in denying the motion for mistrial. Warmington, 86 So. 3d at 1190. The Third District concluded that the State's questioning of Detective Abolsky involving Warmington's failure "to produce any documentation" during the detective's pretrial investigation did not shift the burden of proof because the detective's testimony went to matters of "historical fact." Id. at 1192. In rejecting Warmington's argument, the Third District stated as follows:

> An investigating officer's testimony concerning what he saw, observed, or discovered during the course of his investigation does not shift the burden of proof. It is evidence. In this case, the investigating officer discovered that Warmington did not have copies of certain mortgage documents signed by Sardina at the closing of the transaction at his home. The testimony may or may not have been

- 5 -

significant; one might argue that Warmington, who, after all, merely was the middleman in the transaction, would have no need to have a set of the mortgage documents. On the other hand, the fact certainly was material for the jury to hear.

Id. at 1190.

The Third District also distinguished the conflict cases of Hayes, Ramirez, and Miele, which each held that testimony concerning historical facts similar to the testimony elicited by the State in this case constituted impermissible burden shifting. See id. at 1190-92. The Third District concluded that all of those cases were distinguishable because each involved a situation where "a prosecutor's questioning at trial resulted in the burden at trial being less than it should be, where the jury is left with the impression that a defendant had an obligation to produce evidence of his innocence at trial, or when the burden at trial, is less than reasonable doubt." Id. at 1190.

The dissent in the Third District rejected the majority's attempt to distinguish the conflict cases, explaining that in this case,

> the prosecutor was allowed to ask the detective at trial why he visited the defendant—to allow him to dispel any concerns that he did anything wrong. The detective also testified at trial that the defendant could provide no documentation to support his position that the money owed was a loan rather than a theft. When the defendant could not, he was immediately arrested. If this is not shifting the burden, I don't know what is.

Id. at 1192 (Ramirez, J., dissenting). The dissent also stated that "the majority seems to create a historical exception to the burden shifting" rule, where "our long

- 6 -

history of requiring the State to prove a defendant's guilt is not applicable to 'historical facts.' " Id. at 1193.

## ANALYSIS

The conflict issue in this case is whether testimony elicited by the State during a criminal trial involving a defendant's failure to produce exculpatory evidence impermissibly shifted the burden of proof from the State to the defendant. In addressing this question, we first briefly describe the applicable standards governing burden-shifting claims. Next, we summarize the conflict cases. Finally, we turn to this case to determine whether burden shifting occurred and, concluding that testimony in this case did impermissibly shift the burden of proof, we address whether the error was harmless beyond a reasonable doubt.

### I. Burden Shifting

"It is well settled that due process requires the state to prove every element of a crime beyond a reasonable doubt." Jackson v. State, 575 So. 2d 181, 188 (Fla. 1991). "For that reason, it is error for a prosecutor to make statements that shift the burden of proof and invite the jury to convict the defendant for some reason other than that the State has proved its case beyond a reasonable doubt." Gore v. State, 719 So. 2d 1197, 1200 (Fla. 1998). Accordingly, this Court has long held that "the state cannot comment on a defendant's failure to produce evidence to refute an element of the crime, because doing so could erroneously lead the jury to

believe that the defendant carried the burden of introducing evidence." Jackson, 575 So. 2d at 188.

This Court has, however, recognized a narrow exception to the rule that a prosecutor may not comment on a defendant's failure to produce exculpatory evidence, allowing comment "when the defendant voluntarily assumes some burden of proof." Id. This Court has explained, though, that this exception is inapplicable where the defendant "never assume[s] any responsibility for presenting [evidence] to the jury as part of an affirmative defense." Hayes, 660 So. 2d at 266.

## II.  The Conflict Cases

In Hayes, 660 So. 2d at 265, this Court held that testimony elicited by the State during a criminal trial involving the defendant's failure to request DNA testing prior to trial of various pieces of scientific evidence, which were found at the scene of the crime, impermissibly shifted the burden of proof from the State to the defendant. Specifically, the State called an employee of the Broward County Sheriff's Office Crime Lab to testify about certain pieces of evidence found at the crime scene, including blood-stained clothing. Id. On cross-examination, the defense raised the fact that the State had never requested testing of the blood stains, in an apparent attempt "to cast doubt on the thoroughness of the State's investigation and to imply that a test of the blood could have eliminated [the

defendant] as a suspect." Id. On redirect, the trial court allowed the State to inquire, over defense objection, as to "whether the defense had requested any testing of the blood stains." Id. The witness replied that the defense had not, and added that "the lab had complied with such requests in the past for other defense attorneys." Id.

This Court held that this line of questioning constituted impermissible burden shifting, stating that the prosecutor's questions and statements in Hayes "may have led the jury to believe that [the defendant] had an obligation to test the evidence found at the scene of the murder and to prove that the hair and blood samples did not match his own." Id. "Clearly," this Court explained, the defendant "had no such obligation." Id. This Court also concluded that the narrow exception to burden shifting did not apply, as the defendant's asserted defense to the crime—that the crime was committed by someone else—was not an affirmative defense and therefore did not place any burden of proof on the defendant. Id. Because this Court concluded that the burden-shifting error could not be considered harmless beyond a reasonable doubt, we vacated the conviction and remanded for a new trial. Id. at 266.

The Fourth District reached the same conclusion in Ramirez, 1 So. 3d at 384, in which a defendant was convicted of battery on a law enforcement officer. In that case, the defendant denied battering the officer and alleged that she had

been "treated roughly." Id. In an effort to refute the defendant's version of the events, the State asked the defendant during cross-examination whether she had taken any pictures of her alleged injuries prior to trial. Id. at 385. The defendant responded that she did, but that the pictures were "unclear" so she did not bring them to trial. Id. Defense counsel objected on the basis that the State's questioning constituted impermissible burden shifting, but the trial court overruled the objection. Id. Subsequently, the State pursued the issue further, inquiring whether the defendant had asked anyone at the jail to take closer pictures of her injuries or if she had medical reports to substantiate her injuries, to which the defendant stated that she did not. Id.

After reviewing the testimony elicited by the State, the Fourth District reversed the defendant's conviction, explaining that "the State impermissibly shifted the burden of proof by focusing on the defendant's failure to produce photographs and a doctor's report to substantiate her claim of injury." Id. at 386. The Fourth District explained that the State had the burden to prove that the defendant committed the crime, that the trial court therefore abused its discretion "when it allowed the State to shift that burden to the defendant through its questions and comments that implied the defendant should have produced photographic evidence and medical reports to support her version of events," and that this error was not harmless beyond a reasonable doubt. Id. Additionally,

because the "defendant did not assume a burden of proof by asserting an affirmative defense," the Fourth District determined that the narrow exception to the burden-shifting rule did not apply. Id. at 385.

In Miele, 875 So. 2d at 814, the Second District likewise concluded that impermissible burden shifting had occurred, based on a similar line of questioning. Specifically, the defendant in Miele was first identified as a suspect in a theft of a water jug containing "between $300 and $500 in coins, gold coins, and $2 bills" because he had made purchases at a local convenience store earlier that day using two-dollar bills. Id. at 813. The defendant denied that he committed the crime and stated that he had obtained the two-dollar bills, which he spent at the convenience store, from a jug owned by his father in which the father kept spare money. Id. at 814.

At trial, the defendant called his older sister to corroborate his story. Id. During cross-examination, the State asked the sister whether she had a camera with her on the date the defendant told police about the alternate source of the two-dollar bills. Id. Over defense objection, the sister responded that she did, but that she did not take pictures of her father's money jug at that time. Id. The State then inquired further on this issue, eventually eliciting testimony that the defendant's sister had taken pictures of the source of the money at a later date. Id.

The Second District concluded that this "line of questioning was a comment on [the defendant's] failure to produce photographs of his father's money jug," and thus, had impermissibly shifted the burden of proof. Id. Further, just as in Hayes and Ramirez, the Second District concluded that the exception to burden shifting did not apply, as the defendant's denial of committing the crime did not constitute an "affirmative defense for which he assumed the burden of proof." Id. Moreover, the Second District explained that this error was not harmless beyond a reasonable doubt and therefore required a reversal of the conviction and a new trial. Id. at 814-15.

Taken together, these cases stand for the legal proposition that the State may not elicit testimony at trial that could lead the jury to the erroneous conclusion that the defendant has a duty to produce exculpatory evidence to refute an element of the charged crime. We turn next to this case, where the Third District erroneously distinguished the conflict cases.

### III. This Case

In this case, both the Third District's decision below and the State's arguments before this Court are premised on the assertion that Detective Abolsky's testimony at trial involving Warmington's failure to produce exculpatory documents during the pretrial investigation did not impermissibly shift the burden of proof to Warmington because the detective's testimony involved conversations

- 12 -

that occurred prior to trial and the testimony involved only "historical fact[s]." Warmington, 86 So. 3d at 1192. We conclude that these distinctions are immaterial because the testimony at issue was elicited <u>at trial</u> and, although the testimony was historically accurate, this does not lessen the prejudicial impact of the impermissible testimony. We also conclude that this error was not harmless beyond a reasonable doubt.

## A. Impermissible Burden Shifting

As the dissent in the Third District correctly observed, "the prosecutor was allowed to ask the detective <u>at trial</u> why he visited the defendant—to allow him to dispel any concerns that he did anything wrong" and the detective "also testified <u>at trial</u> that the defendant could provide no documentation to support his position that the money owed was a loan rather than a theft." <u>Id.</u> (Ramirez, J., dissenting). When Warmington answered that he could not produce this evidence, Detective Abolsky testified that Warmington was "immediately arrested." <u>Id.</u> We agree with the dissent below that this line of questioning clearly constituted impermissible burden shifting.

The conflict cases illustrate this point. Just as in <u>Hayes</u>, where this Court held that State-elicited testimony involving a defendant's pretrial failure to take steps to prove his innocence impermissibly shifted the burden of proof because that testimony "may have led the jury to believe that [the defendant] had an obligation

- 13 -

to test the evidence found at the scene of the murder and to prove that the hair and blood samples did not match his own," Hayes, 660 So. 2d at 265, Detective Abolsky's testimony regarding his pretrial investigation may have led the jury to believe that Warmington had a duty to produce exculpatory evidence. Indeed, the line of questioning in this case is strikingly similar to the questioning in the conflict cases, each of which correctly recognized, in accordance with this Court's long-standing prohibition on burden shifting, that the testimony was improper.

As an alternative argument, the State asserts that Warmington invited Detective Abolsky's testimony by asserting, during the detective's pretrial investigation, that he used the money he received from the Pistols to fund a loan to a third party. However, just as in the conflict cases, Warmington's asserted defense—that he used the money to fund a loan to a third party and therefore did not commit theft—is not an affirmative defense for which he voluntarily assumed any burden of proof. Simply asserting a defense to a crime does not create any issue for which a defendant "carries [the] burden of proof." Id. (citing Jackson, 575 So. 2d at 188). Therefore, in the absence of an affirmative defense for which the defendant carries the burden of proof, which was not present in this case, the narrow exception allowing the State to comment on the defendant's failure to produce exculpatory evidence is inapplicable, and accordingly, we reject the State's alternative argument.

For all these reasons, we conclude that the State's questioning of Detective

Abolsky could have erroneously led the jury to believe that Warmington carried

the burden of introducing exculpatory evidence and, therefore, impermissibly

shifted the burden of proof from the State to Warmington. Accordingly, we now

must analyze whether this error was harmless beyond a reasonable doubt. See

Jackson, 575 So. 2d at 189.

## B. Harmless Error

As this Court has repeatedly stated, the harmless error test "places the

burden on the state, as the beneficiary of the error, to prove beyond a reasonable

doubt that the error complained of did not contribute to the verdict or, alternatively

stated, that there is no reasonable possibility that the error contributed to the

conviction." State v. DiGuilio, 491 So. 2d 1129, 1135 (Fla. 1986). We have

explained that

> [a]pplication of the test requires an examination of the entire record
> by the appellate court including a close examination of the permissible
> evidence on which the jury could have legitimately relied, and in
> addition an even closer examination of the impermissible evidence
> which might have possibly influenced the jury verdict.

Id. However, this Court has cautioned that "[h]armless error is not a device for the

appellate court to substitute itself for the trier-of-fact by simply weighing the

evidence." Id. at 1139. Instead, the "focus is on the effect of the error on the trier-

of-fact." Id. The question is "whether there is a reasonable possibility that the

error affected the verdict." Id. "If the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict, then the error is by definition harmful." Id.

During the course of the trial, both the State and Warmington called multiple witnesses in order to support their directly conflicting theories. While both sides agreed that Warmington, the Pistols, and Sardina entered into some form of investment deal, the specifics of this arrangement were contested.

The State presented no conclusive evidence of theft. Yet, through both its questioning and Detective Abolsky's testimony, the State impermissibly informed the jury that Warmington was unable to produce documents supporting his version of the events. Because the State presented no conclusive evidence of guilt, the State's presentation of Detective Ablosky's testimony became even more important to the case. The importance of this evidence was bolstered by the fact that Detective Abolsky testified that he had arrested Warmington immediately following his failure to produce documents supporting his claim.

Specifically, during direct examination, Detective Abolsky testified that he was assigned to investigate Warmington's case and that he interviewed Warmington as the final step in his investigation. Detective Abolsky stated that he interviewed Warmington in order to allow Warmington to "dispel any alarms [Detective Abolsky had] or concerns that [Warmington] did anything wrong."

Although defense counsel's objection to this testimony was sustained, the jury was still exposed to the fact that Detective Abolsky initiated the interview with Warmington in order to determine whether Warmington could refute the detective's concerns. Subsequently, the State asked Detective Abolsky, over defense objection that was denied, whether Warmington was "able to produce any documentation" supporting his assertion that the Pistols' money had been used to fund a loan to Sardina. The detective replied that Warmington could not produce documents supporting his claim.

The prejudicial effect of the testimony elicited by the State was magnified by the fact that Detective Abolsky, a detective with the Economic Crimes Bureau who presumably possesses a strong understanding of what evidence is relevant in proving theft, testified that he arrested Warmington immediately following Warmington's failure to produce the exculpatory documents. Indeed, after inquiring into whether Warmington could produce exculpatory documents, the State asked "[w]hen you had that conversation with Mr. Warmington, what happened?" Detective Abolsky responded, "I placed him under arrest." The State then ended the direct examination.

This chronology conveyed to the jury the distinct impression that Warmington was arrested as a direct result of failing to provide Detective Abolsky with evidence proving his innocence. Given that Detective Abolsky portrayed

Warmington's failure to produce exculpatory documents as the reason for his arrest, it is very likely that a jury could have inferred that Warmington had a duty to produce such evidence because, if Warmington did not have any such duty, the arrest would not have occurred immediately following his failure to produce the exculpatory documents.

After a thorough review of the record, including both the permissible and impermissible evidence upon which the jury could have relied, we cannot conclude, beyond a reasonable doubt, that the impermissible burden-shifting testimony did not affect the jury's verdict. Accordingly, this error was not harmless beyond a reasonable doubt.

## CONCLUSION

For all the reasons explained in this opinion, we conclude that the testimony elicited by the State from the lead detective involving Warmington's failure to produce exculpatory evidence impermissibly shifted the burden of proof from the State to Warmington, and that this error was not harmless beyond a reasonable doubt. Accordingly, we quash the Third District's decision, approve the decisions of the Fourth District in <u>Ramirez</u> and the Second District in <u>Miele</u>, and remand this case for a new trial.

It is so ordered.

LABARGA, C.J., and QUINCE, J., concur.

LEWIS, J., concurs in result.
POLSTON, J., dissents with an opinion, in which CANADY and PERRY, JJ., concur.
PERRY, J., dissents with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

POLSTON, J., dissenting.

I agree with Justice Perry's dissent that this Court does not have jurisdiction in this case. As Justice Perry states, the Third District's decision in Warmington v. State, 86 So. 3d 1188 (Fla. 3d DCA 2012), does not expressly and directly conflict with this Court's decision in Hayes v. State, 660 So. 2d 257 (Fla. 1995), the Fourth District's decision in Ramirez v. State, 1 So. 3d 383 (Fla. 4th DCA 2009), or the Second District's decision in Miele v. State, 875 So. 2d 812 (Fla. 2d DCA 2004).

In Hayes, Ramirez, and Miele, the prosecutors commented on the defendants' failure to produce exculpatory evidence at trial, specifically evidence suggesting innocence and relating to elements of the charged crimes. In Hayes, 660 So. 2d at 265, the defendant was charged with murder, but the prosecutor's questioning suggested that the defendant was responsible for proving his innocence at trial by producing exculpatory scientific evidence from the crime scene. In Ramirez, 1 So. 3d at 384-86, the defendant was charged with battery on a law enforcement officer, but the prosecutor commented on the defendant's failure to produce during the trial photographs of injuries the defendant claimed were

- 19 -

sustained during a battery of the defendant rather than a battery committed by the defendant. Similarly, in Miele, 875 So. 2d at 814, the prosecutor's questioning regarding the failure to produce testimony from a specific witness and photographic evidence at trial of another source of $2 bills "suggested at best that Miele had a duty to present additional evidence to refute the State's allegation that these $2 bills were retrieved during the burglary."

In contrast, Warmington did not involve comments regarding the failure of the defendant to produce exculpatory evidence at trial that related to elements of the charged crime. Detective Abolsky testified to historical facts of his investigation of the defendant, not any evidence of innocence that the defendant failed to produce at trial. As the Third District explained, "[t]he inquiry made in this case is no different than an officer's testimony of the inability of a defendant to produce his registration during the course of an investigatory stop." Warmington, 86 So. 3d at 1190 n.1. Moreover, the fact that the defendant did not show the investigating officer a set of documents when he was questioned before his arrest does not relate to any element of grand theft. See id. at 1191. Therefore, unlike the situations in Hayes, Ramirez, and Miele, the prosecutor's questions in Warmington would not have led the jury to believe that the defendant had the burden to refute an element of the charged crime.

Accordingly, because <u>Warmington</u> does not conflict with any of the cited cases, I respectfully dissent.

CANADY and PERRY, JJ., concur.

PERRY, J., dissenting.

With respect to my colleagues in the majority, I dissent because I do not agree that this Court has jurisdiction for discretionary review in this case. The decision in <u>Warmington</u> does not expressly and directly conflict with any of the cited appellate court decisions. <u>See</u> art. V, § (b)(3), Fla. Const. Accordingly, I would leave the Third District's <u>Warmington</u> decision undisturbed.

The reasons that I dissent are as follows. First, in <u>Warmington</u>, the facts and circumstances are distinguishable from those found in the decisions cited by the majority, <u>see</u> majority op. at 1-2, and negate a conclusion that there is express and direct conflict between these decisions. The record supports neither the assertion that the State invited the jury to return a guilty verdict in lieu of the State proving every element of the crime charged, nor a conclusion that the State led the jury to believe Warmington had a duty to present exculpatory evidence. Moreover, the majority ignores that when Warmington chose to present a defense case, the State successfully refuted Warmington's hypothesis of his innocence. Finally, the trial court's judgment to permit the jury to consider the lead detective's testimony did not constitute error.

- 21 -

## There Is No Conflict of Decisions

The facts and circumstances found in this case are distinguishable from the facts and circumstances presented in the asserted conflict decisions. First, this case is not in express and direct conflict with our decision in Hayes.

In Hayes, we previously described how the State used an expert witness' testimony to impermissibly shift its burden of proof:

> [O]n redirect, the trial judge overruled a defense objection and allowed the State to inquire whether the defense had requested any testing of the blood stains. The witness replied that the defense had not asked the crime lab to test the blood stains and added that the lab had complied with such requests in the past for other defense attorneys. Similar comments were made by the prosecutor in closing argument concerning the failure of the defense to test hairs found at the scene of the murder. We find that the prosecutor's comments were prejudicial.

Hayes, 660 So. 2d at 265. However, in this case there was no impermissible burden shifting by the State.

The record plainly shows that the State's direct examination of Detective Abolsky about what happened during his investigation did nothing to shift the burden from the State to prove, beyond a reasonable doubt, every element of the crime. It is well established that impermissible burden shifting involves the State's comment on the defendant's failure to refute one or more elements of the crime. See Evans v. State, 838 So. 2d 1090, 1094 (Fla. 2002) (citing Jackson, 575 So. 2d at 188). Furthermore, impermissible burden shifting is attributable to the State's

- 22 -

invitation for the jury to find guilt when the State has failed to prove every element of the offense beyond a reasonable doubt. See Gore v. State, 719 So. 2d 1197, 1200 (Fla. 1998) ("[I]t is error for a prosecutor to make statements that shift the burden of proof and invite the jury to convict the defendant for some reason other than that the State has proved its case beyond a reasonable doubt."); see also Ealy v. State, 915 So. 2d 1288, 1291 (Fla. 2d DCA 2005) ("The types of comments that may constitute improper burden shifting have one thing in common, that being 'the prosecutor's invitation to convict the defendant for a specific reason other than the state's proof of the elements of the crime beyond a reasonable doubt, i.e., because the defendant failed to mount a defense by not testifying, presenting evidence to prove his or her innocence, or refuting an element of the crime.' " (quoting Rivera v. State, 840 So. 2d 284, 288 (Fla. 5th DCA 2003))).

During Warmington's trial, the State fully carried its burden of proof under the requirements of Florida law. See § 812.014(1), Fla. Stat. (2002) ("A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently: (a) [d]eprive the other person of a right to the property or a benefit from the property[;] [and] (b) [a]ppropriate the property to his or her own use or to the use of any person not entitled to the use of the property.").

Specifically, there is competent, substantial evidence in this record that Warmington took on deposit into his personal bank account $150,000 from the Pistols, and partially used it for purposes other than a loan to Sardina to obtain a second mortgage on real property and his rent. This record reflects that the Pistols believed that their loan to Sardina, for which Warmington acted as the intermediary, was to be secured by a mortgage on real property that Sardina was attempting to secure. When the State presented proof to the jury that the funds were used for purposes other than a mortgage to Sardina, such evidence was legally sufficient to support the guilty verdict against Warmington. The State presented evidence that Warmington received cashier's checks totaling $150,000 from the Pistols, and deposited those funds into his personal bank account as part of a ruse. Warmington's ruse was accomplished when he represented to Sardina that the Pistols decided not to lend him the money after all, even though the Pistols had in fact deposited the total funds agreed upon for Sardina's second mortgage. The State presented evidence that Warmington, rather than Sardina, had control over and used the funds received from the Pistols. Therefore, it is clear that the State proved the elements of grand theft. See id.

Based on such evidence in the record on appeal, the Warmington majority below correctly recognized that the State did not shift any aspect of its burden of proof to the defendant. See Warmington, 86 So. 3d at 1190. Accordingly, there is

- 24 -

no apparent basis for concluding that there is express and direct conflict between the decision on review and Hayes.[2]  See Hayes, 660 So. 2d at 265.

Next, the present case is not in conflict with Ramirez because Warmington's possession of mortgage loan documentation is not an element of the crime for which he was convicted.  But see majority op. at 10.  In Ramirez, the Fourth District stated in pertinent part that "[t]he State is not permitted to 'comment on a defendant's failure to produce evidence to refute an element of the crime.' " Ramirez, 1 So. 3d at 385 (quoting Jackson, 575 So. 2d at 188).

However, Detective Abolsky's testimony about this matter was merely his effort accurately to relay historical facts stemming from Warmington's pre-arrest

---

2. The majority correctly states that Warmington never asserted an affirmative defense that implicated the Hayes exception.  Majority op. at 14 (citing Hayes, 660 So. 2d at 265 ("[W]e recognized an exception to the general rule that the prosecutor may not comment on the failure of the defense to call any witnesses when the defendant raises an issue for which the defense carries some burden of proof." (citing Jackson, 575 So. 2d at 188))).

We have previously explained that "[a]n affirmative defense does not concern itself with elements of the offense at all; it concedes them.  In effect, an affirmative defense says, 'Yes, I did it, but I had a good reason.' " State v. Cohen, 568 So. 2d 49, 51-52 (Fla. 1990).  Moreover, " '[a]n affirmative defense is any defense that assumes the complaint or charges to be correct but raises other facts that, if true, would establish a valid excuse or justification or a right to engage in the conduct in question.' " Herrera v. State, 594 So. 2d 275, 277 (Fla. 1992) (quoting Cohen, 568 So. 2d at 51).

There is no evidence in this record that Warmington asserted any affirmative defense.  He instead presented a hypothesis of his innocence.  Moreover, the State did nothing to lead the jury to believe that Warmington should have asserted an affirmative defense.  Therefore, I agree that the Hayes exception is not implicated in this case.

- 25 -

verbal disclosure to the detective. The majority below made this precise point—whether Warmington possessed loan documents is not an element of the crime—pertaining to the detective's testimony. See Warmington, 86 So. 3d at 1191. For this reason, I conclude that the decision on review does not conflict with Ramirez, which prohibits the State from shifting its burden of proof to the defendant. See Ramirez, 1 So. 3d at 386.

Similarly, there is no apparent basis for concluding that the Warmington decision on review conflicts with Miele. But see majority op. at 11. In Miele, the Second District also stated that "[i]t is not permissible for the State to comment on the defendant's failure to present evidence refuting an element of the charged crime." Miele, 875 So. 2d at 814 (citing Jackson, 575 So. 2d at 188). I agree with the observation made by the Warmington majority below: "Our case is readily distinguishable from Miele, again on the ground that Detective Abolsky was testifying as to historical fact." Warmington, 86 So. 3d at 1192. Accordingly, the decision on review is not in conflict with Miele regarding impermissible burden shifting by the State. See Miele, 875 So. 2d at 814.

In summation, it is unreasonable to conclude that the State's direct examination of Detective Abolsky constitutes the State's impermissible comment on Warmington's failure to refute elements of the crime. Further, it is unreasonable to conclude that the State's prompting of the detective's testimony at

issue demonstrates that the State invited the jury to find Warmington guilty without first proving every element of the crime beyond a reasonable doubt.

**The Impact of the Defense's Case on the Verdict**

Next, not only was there no impermissible burden shifting by the State during Warmington's trial, there is also little doubt that Warmington's defense case impacted the jury's verdict. The majority neglects to acknowledge that Warmington put on a defense during his trial. Notably, without mentioning Warmington's defense case, the majority simply states "[a]fter the close of evidence, the jury returned a verdict, finding Warmington guilty of the lesser-included crime of theft of an amount greater than $20,000 but less than $100,000." Majority op. at 5.

However, after the State rested its case, Warmington presented a defense in which he argued that he was actually innocent of committing the charged crime. The record shows that Warmington was among the witnesses who testified for the defense about the alleged loan deal that Warmington discussed with Detective Abolsky prior to his arrest. Warmington testified that when he received the money directly from the Pistols and deposited it into his personal bank account he did so lawfully, while acting as an intermediary in the supposed loan transaction. During cross-examination, Warmington admitted that he used portions of funds that the Pistols deposited into his personal bank account.

After Warmington asserted that he was actually innocent, the State was required under Florida law to refute any reasonable hypothesis of his innocence—which it did, partly by way of the testimony it elicited from Warmington.[3] But see generally H.M. v. State, 802 So. 2d 1185 (Fla. 3d DCA 2002) ("[T]he trial court should have granted the respondent's motion for judgment of acquittal with respect to the burglary count where there was no evidence refuting his reasonable hypothesis of innocence that he was only an onlooker or mere witness to a crime." (citing J.W. v. State, 467 So. 2d 796, 797 (Fla. 3d DCA 1985))); Tomlin v. State, 333 So. 2d 500, 501 (Fla. 2d DCA 1976) ("[T]he evidence was subject to the reasonable hypothesis of appellant's innocence in that the marijuana [as the appellant argued] may have been in the possession of one of the persons who was renting a room in the house." citing Harris v. State, 307 So. 2d 218, 220 (Fla. 3d

_____

3. Notably, the trial court explicitly instructed the jury about Warmington's presumption of innocence under the law:

> The defendant has entered a plea of not guilty. This means you must presume or believe the defendant is innocent. The presumption stays with the defendant as to each material allegation in the Information through each stage of the trial unless it has been overcome by the evidence to the exclusion of and beyond a reasonable doubt. To overcome the defendant's presumption of innocence the State has the burden of proving: the crime with which the defendant is charged was committed and the defendant is not required to present evidence or prove anything.

(Trial Transcript vol. VI, 908, Feb. 16, 2010.)

DCA 1974) ("We are of the opinion that the facts sub judice are supportive of reasonable hypotheses of the defendant's innocence . . . .")).

By way of the present misapprehension that the State committed impermissible burden shifting, the State is being unduly penalized. This record supports a conclusion that because the State successfully refuted Warmington's hypothesis of his innocence by proving every element of grand theft, the jury returned its guilty verdict. Conversely, the majority's view that Detective Abolsky's testimony alone may have led the jury to conclude that Warmington had a duty to produce exculpatory evidence is overreaching and ignores the impact Warmington's defense had during the adversarial process en route to the jury's guilty verdict.

### The Trial Court Committed No Error

Finally, even if this Court had jurisdiction for discretionary review in this case, I respectfully disagree that the trial court's ruling that allowed the jury to consider Detective Abolsky's testimony constituted harmful error. To the contrary, I do not agree that the trial judge's ruling constituted any error at all. However, even assuming arguendo that the trial judge's ruling at issue was erroneous, in light of precedent, the trial judge's ruling was harmless beyond a reasonable doubt because the State provided legally sufficient proof for every element of the crime for which Warmington was charged. See generally DiGuilio,

- 29 -

491 So. 2d at 1135 ("The harmless error test, as set forth in Chapman and progeny, places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction." (citing Chapman v. California, 386 U.S. 18, 24 (1967))).  The majority concludes that the State did not carry its burden as the beneficiary of the supposed error.

> The prejudicial effect of the testimony elicited by the State was magnified by the fact that Detective Abolsky, a detective with the Economic Crimes Bureau who presumably possesses a strong understanding of what evidence is relevant in proving theft, testified that he arrested Warmington immediately following Warmington's failure to produce the exculpatory documents.  Indeed, after inquiring into whether Warmington could produce exculpatory documents, the State asked "[w]hen you had that conversation with Mr. Warmington, what happened?"  Detective Abolsky responded, "I placed him under arrest."  The State then ended the direct examination.
> This chronology conveyed to the jury the distinct impression that Warmington was arrested as a direct result of failing to provide Detective Abolsky with evidence proving his innocence.  Given that Detective Abolsky portrayed Warmington's failure to produce exculpatory documents as the reason for his arrest, it is very likely that a jury could have inferred that Warmington had a duty to produce such evidence because, if Warmington did not have any such duty, the arrest would not have occurred immediately following his failure to produce the exculpatory documents.

Majority op. at 17-18.

I disagree with the majority's view on this point, because such a view departs from our caution in DiGuilio that "[h]armless error is not a device for the

appellate court to substitute itself for the trier-of-fact by simply weighing the evidence." DiGuilio, 491 at 1139; Majority op. at 15. Here, the majority appears to substitute itself in the role of trier-of-fact by its assumption that the jury inferred that Warmington had a duty to produce exculpatory evidence. Nevertheless, there are ample grounds for drawing the opposite inference. Namely, a reasonable person could infer that the jury assumed that Warmington had no duty to produce exculpatory evidence, in light of the trial judge's repeated explanations to the jury that Warmington was not required to present evidence or prove anything.

Furthermore, the trial judge provided instruction concerning an out-of-court statement attributed to Warmington that was placed before the jury. Specifically, the trial court instructed the jury to carefully weigh the statement, and that it should make certain that the out-of-court statement was freely and voluntarily made. (Trial Transcript vol. VI at 910.) After the State rested, the trial court considered arguments from the parties concerning Warmington's motion for mistrial based on Detective Abolsky's testimony and ultimately denied it.

As the Third District aptly stated:

[W]e are not moved by the fact Warmington was arrested immediately after he told Detective Abolsky he did not have a copy of the mortgage documents. This again is a matter of historical fact. The testimony, taken as a whole, was prejudicial to Warmington. However, all defendants are arrested at some point, and the fact of arrest regularly makes its way into testimony at trial. The State at all times had the burden to prove the case against Warmington beyond a

- 31 -

reasonable doubt. We do not believe this burden was lessened by Detective Abolsky's testimony.

Warmington, 86 So. 3d at 1192. Clearly, Warmington's apparent theft of a large sum of money from the Pistols was the reason for his arrest.

The majority speculates about the impact of the detective's testimony, asserting that "we cannot conclude, beyond a reasonable doubt, that the impermissible burden-shifting testimony did not affect the jury's verdict." Majority op. at 18. By such a view, I infer that the majority concludes that the trial court should have granted Warmington's motion for mistrial based on the assertion of impermissible burden shifting. However, I see nothing in this record that shows the trial court's ruling to deny Warmington's motion for mistrial was erroneous.

**Conclusion**

Because there was no impermissible burden shifting during Warmington's trial, there is no basis for concluding that the Third District's decision affirming his direct appeal expressly and directly conflicts with any of the identified appellate decisions. Therefore, I would dismiss for lack of jurisdiction. Furthermore, even if this Court had jurisdiction for this present review, I cannot agree that the trial court committed any error. Accordingly, I respectfully dissent.

Application for Review of the Decision of the District Court of Appeal - Direct Conflict of Decisions

      Third District - Case No. 3D10-1028

      (Dade County)

Carlos Jesus Martinez, Public Defender, and Robert Kalter, Assistant Public Defender, Eleventh Judicial Circuit, Miami, Florida,

      for Petitioner

Pamela Jo Bondi, Attorney General, Tallahassee, Florida, and Richard L. Polin, Bureau Chief, and Nicholas Adam Merlin, Assistant Attorney General, Miami, Florida,

      for Respondent