678 So.2d 1358 (1996)
James L. RAUPP, Appellant,
v.
STATE of Florida, Appellee.
No. 95-755.
District Court of Appeal of Florida, Fifth District.
August 9, 1996.
*1359 James B. Gibson, Public Defender, and Dan D. Hallenberg, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Carmen F. Corrente, Assistant Attorney General, Daytona Beach, for Appellee.
GOSHORN, Judge.
James Raupp appeals his conviction for one count of sexual battery on a child less than 12 years of age, in violation of subsection 794.011(2), Florida Statutes (1993).[1] Defendant raises a number of issues, two of which merit discussion and reversal.
Defendant was charged after the babysitter reported that Defendant had committed sexual battery upon her while Defendant, Defendant's two year old son, and the babysitter lay upon the boy's twin bed trying to get the boy to sleep. Suffice it to say that the case was a true credibility contest, with no hard evidence implicating Defendant and only the babysitter's testimony supporting the conviction.
The babysitter initially reported that she thought that Defendant had performed oral sex upon her and had penetrated her vagina digitally. When the swabs taken from the babysitter's vaginal area tested negative for the presence of Defendant's DNA, the State dropped the charge of capital sexual *1360 battery by oral union. Pretrial, defense counsel asserted that the results of the DNA tests were relevant to the babysitter's credibility and were strong evidence that the whole abuse report was concocted. Thus, he argued, the test results should be admitted into evidence. The court disagreed on the basis that just because there was no scientific evidence to corroborate what the babysitter said did not mean that she was being untruthful. During Defendant's cross-examination of the babysitter, Defendant attempted to impeach the babysitter with the DNA test results, but the trial court sustained the State's objection. On appeal, Defendant adheres to his argument that the DNA evidence was relevant to the issue of credibility and should have been admitted. We agree.
Defendant was precluded from presenting a full and fair defense by the trial court's refusal to admit the negative evidence of the DNA test results. This was not a collateral matter, but rather went to the circumstances of the crime itself. The babysitter reported to the police and to a doctor that Defendant had licked her vaginal area while they were on the bed. She did not make mention of the oral encounter when the prosecutor asked her at trial to describe what Defendant had done to her, although she naturally should have included her assertion of oral contact, as that was a material, significant fact. Her failure to do so opened her up to impeachment on cross examination. Witnesses may be impeached by their previous failure to state a fact in circumstances where that fact naturally would have been asserted. State v. Smith, 573 So.2d 306, 313 (Fla.1990) (citing Jenkins v. Anderson, 447 U.S. 231, 239, 100 S.Ct. 2124, 2129, 65 L.Ed.2d 86 (1980)). Because it was not a collateral matter, Defendant should have been permitted to adduce substantive evidence contradicting the babysitter's claim of oral contact. See Teemer v. State, 615 So.2d 234 (Fla. 3d DCA 1993) (holding reversible error not to admit DNA test results showing that the semen swabbed from the victim's vagina was not from defendant).
The State could not prevent Defendant from bringing out the babysitter's initial reports of oral contact by simply not charging Defendant with that crime. Defendant is entitled to have the jury hear about the entire incident, whether charged or not. Certainly the jury could find that the fact that the DNA results did not support the babysitter's report of oral contact undermined the babysitter's credibility and subjected her testimony of digital penetration to doubt. The error in not admitting the DNA evidence cannot, therefore, be deemed harmless.
The State's point that the DNA test did not eliminate the possibility of oral contact goes to the weight to be given the evidence, not its admissibility. Once the DNA evidence is admitted, the State has the opportunity to raise any arguments it may have concerning the weight the jury should afford the evidence.
A second basis for reversal arose when the prosecutor was permitted to argue, over objection, that Defendant had failed to call as witnesses his brother-in-law and his older son, now seven years old, both of whom were present the evening of the alleged sexual battery. During closing argument, the prosecutor stated:
Now, the defense put on a case, they put on witnesses. Why didn't we hear from his brother-in-law?
[Defense counsel]: Your Honor, I'm going to object to that. The brother-in-law clearly is available to her as he was to us. He has nothing to add, and she could have asked about him. She could have subpoenaed him and done all that stuff. I think once again it's highly improper. I would move for it to be struck and I ask for mistrial.
THE COURT: Your motions will be denied. Ms. Brennan, Please be wrapping it up.
[Prosecutor]: Why didn't we hear from Max? He's seven years old now.
[Defense counsel]: Your Honor, once again, I renew the objection on the same grounds.
THE COURT: All right. I'll let you have a standing objection, and that way you don't have to keep jumping up and down.

*1361 I would like you to be wrapping up, Ms. Brennan.
[Prosecutor]: Yes, Judge.
THE COURT: That will help keep Mr. Kenny from jumping up and down.
On appeal, Defendant correctly argues that these comments on his failure to call as witnesses either his brother-in-law or his son acted to impermissibly shift the burden of proof to him and thus constituted harmful error. In Jackson v. State, 575 So.2d 181 (Fla.1991) the prosecutor asked the jury to draw inferences from the fact that Jackson did not call his mother to testify. The defendant himself did not testify either. The court held that the comments constituted reversible error:
Jackson correctly contends that the state should not have told the jury to draw inferences from the fact that Jackson did not call his mother to testify. It is well settled that due process requires the state to prove every element of a crime beyond a reasonable doubt, and that a defendant has no obligation to present witnesses. Accordingly, the state cannot comment on a defendant's failure to produce evidence to refute an element of the crime, because doing so could erroneously lead the jury to believe that the defendant carried the burden of introducing evidence. However, this Court has applied a narrow exception to allow comment when the defendant voluntarily assumes some burden of proof by asserting the defenses of alibi, self-defense, and defense of others, relying on facts that could be elicited only from a witness who is not equally available to the state.
Id. at 188 (citations omitted) (footnote omitted). See also Hayes v. State, 660 So.2d 257 (Fla.1995) (reversible error, even in the face of a curative, albeit questionable, instruction, to allow prosecutor to elicit testimony concerning the failure of the defense to request scientific testing of pieces of evidence and then argue that failure to the jury).
Defendant's case comes within the broad prohibition against comments on the failure to call witnesses. The exceptions noted in Jackson are inapplicable in this case. Defendant did not assert the defenses of alibi, self-defense, or defense of others, and thus he could not be said to have asserted any claim whereby he carried any burden of proof. Defendant's theory of defense was simply denial that he had committed the charged offense.
The error in permitting the prosecutor's argument was not harmless. The State was clearly insinuating to the jury that the "missing" witnesses had pertinent information which Defendant could have provided but did not. Because the case was a pure credibility contest and the evidence was anything but overwhelming, it was reversible error to permit the State to bring the "missing" witnesses to the attention of the jury, thereby implying that Defendant had failed in his burden of proof or was hiding something from them.
Further, although not presenting a basis for reversal, we disapprove the trial court's refusal to listen to a defense motion.[2] Upon defense counsel's request to "make a motion at this stage, Your Honor," the trial court responded, "No. Well, you can make it, but I'm not going to listen to it." With that, the trial court departed the courtroom, leaving defense counsel to proffer his motion in the presence of only the court reporter. When court reconvened, the following ensued:
THE COURT: Please be seated. Is there anything else we need to take up before we bring the jury back in? Do you want to make a motion or did you already do it?
[Defense Counsel]: I made the motion because you said you wouldn't listen to it. I made it, and I presume you are denying it.
THE COURT: I guess so. Was it for a mistrial?
[Defense Counsel]: Yes. And a recusal.
THE COURT: A recusal in the middle of a trial?
[Defense Counsel]: Yes. That was the motion, Your Honor. Yes.

*1362 THE COURT: I'll deny the motion. We'll resume with the cross-examination of the defendant.
Defense counsel has the right and duty to move the court for rulings; the court has the concomitant duty to give those motions its attention and consideration. We find the trial court's refusal to listen to a motion inappropriate and unacceptable. If a trial court finds counsel is abusing the courtroom, sanctions, including contempt, are appropriate. Turning a deaf ear is not.
REVERSED and REMANDED.
DAUKSCH and HARRIS, JJ., concur.
NOTES
[1] Defendant was charged by amended information with one count of capital sexual battery by digital penetration, one count of capital sexual battery by oral union, and one count of lewd and lascivious action upon a minor. On the day of trial, the State dismissed the count alleging an oral union. At sentencing, the trial court dismissed the lewd and lascivious count.
[2] The judge who presided over the trial recused himself post-trial and was replaced by Judge Alice Blackwell White.