PARIENTE, J.
The conflict issue in this case concerns whether testimony elicited by the State during a criminal trial involving a defendant’s failure to produce exculpatory evidence impermissibly shifted the burden of proof from the State'to the defendant. In Warmington v. State, 86 So.3d 1188, 1192 (Fla. 3d DCA 2012), the Third District Court of Appeal held that such testimony did not shift the burden of proof because the testimony consisted only of “historical fact[s]” and involved actions taken by the defendant prior to trial. We have jurisdiction on the basis that the Third District’s decision expressly and directly conflicts with this Court’s- decision in Hayes v. State, 660 So.2d 257 (Fla.1995); the Fourth District Court of Appeal’s decision in Ramirez v. State, 1 So.3d 383 (Fla. 4th DCA 2009); and the Second District Court of Appeal’s decision in Miele v. State, 875 So.2d 812 (Fla. 2d DCA 2004), each of which held that similar testimony constituted impermissible burden shifting. See art. V, § 3(b)(3), Fla. Const.
We conclude that the State’s questioning of the lead detective assigned to investigate the defendant’s case constituted impermissible burden shifting because the testimony commented on the defendant’s failure to produce exculpatory evidence, which he had no legal duty to produce. We further determine that this error was not harmless beyond a reasonable doubt. Accordingly, we quash the Third District’s decision in Warmington, which is contrary to our decision in Hayes; approve the decisions of the Fourth District in Ramirez and the Second District in Miele; and remand this case for a new trial.
BACKGROUND
The State charged the defendant, James Warmington, with first-degree theft of an amount greater than $100,000. This charge arose from a business investment deal between Warmington and three other individuals — Robert Pistol, Christine Pistol, and Rene Sardina. While the existence of the deal was not disputed,. the terms and nature of the investment deal were contested.
At trial, the State asserted that Warm-ington agreed to act as an intermediary between the Pistols and Sardina, facilitating the execution of a private mortgage agreement between the parties, but that Warmington subsequently stole the money that the Pistols intended to loan to Sardi-na. Conversely, Warmington argued that the ' Pistols made an unsecured personal loan to Warmington and Sardina'jointly, which was not secured by real property, and although Warmington failed to repay this unsecured loan, this failure did not constitute theft.
During trial, the State called Detective Stuart Abolsky, a detective with the Miami-Dade Police Department’s Economic Crimes Bureau who was assigned to investigate Warmington’s case. Detective *650 Abolsky testified that after contacting the Pistols and Sardina, he interviewed Warm-ington at his home. At trial, when inquiring about Detective Abolsk/s interview with Warmington, the State elicited testimony that Warmington contends imper-missibly shifted the burden of proof. This portion of the record provides as follows:
[Prosecutor]: Did you interview anyone else as a result of this investigation?
[Detective Abolsky]: Mr. Warming-ton.
[Prosecutor]: When you interviewed Mr. Warmington, how far [sic] is it that it came about?
[Detective Abolsky]: Well, what I believed to be the complete case file [sic], I went to his home to visit with him.
[Prosecutor]: What [was] the purpose of your visit?
[Detective Abolsky]: The purpose of my visit,was to allow him to dispel any alarms that I may have or concerns that he did anything wrong.
[Prosecutor]: And was he able to do that?
[Defense Counsel]: Objection. Burden shifting.
THE COURT: Sustained.
[Defense Counsel]: We have a motion to object, Judge.
THE COURT: Yes.
[Prosecutor]: When you went and spoke to him, what was the extent of your investigation?
[Detective Abolsky]: I advised him of the nature of the investigation. We spoke outside his residence. I began explaining to him what the allegations were and I offered him an opportunity to—
[Defense Counsel]: Objection.
THE COURT: Sustained.
[Prosecutor]: Your Honor.
THE COURT: Continue on.
[Prosecutor]: And what was the result of that conversation?
[Detective Abolsky]: Well, Mr. Warm-ington had indicated to me that a loan had been funded to Mr. Rene Sardina and that Mr. Sardina was no longer paying on the loan. The loan was comprised [sic] basically a mortgage or something and as a result he had explained this to the Pistols and subsequently it was a matter he was trying to take care of.
[Prosecutor]: Was the defendant able to produce any documentation?
[Defense Counsel]: Objection. Burden shifting. We reserve—
THE COURT: Overruled.
[Prosecutor]: Was there documentation that day with regards to this explanation he gave you?
[Detective Abolsky]: No, in fact, he represented that his home was also his office. And when I asked for him to provide any documentation, he couldn’t.
[Defense Counsel]: Objection.
THE COURT: Same objection as previously noted. We reserve the motion.[1]
THE COURT: Continued objection. Go ahead.
[Prosecutor]: When you had that conversation with Mr. Warmington, what happened?
[Detective Abolsky]: I placed him under arrest.
[Prosecutor]: Thank you, Judge. No further questions.
*651 Later, outside the presence of the jury, defense counsel made a motion for mistrial, alleging that burden shifting occurred during Detective Abolsky’s testimony. The trial court denied the motion for mistrial, stating that the testimony elicited from the detective did not constitute burden shifting.
After the close of evidence, the jury returned a verdict, finding Warmington guilty of the lesser-included crime of theft of an amount greater than $20,000 but less than $100,000. The trial court sentenced Warmington to two years of community control, followed by ten years’ probation, and payment of restitution to the victims.
On appeal, the Third District affirmed Warmington’s conviction, rejecting his argument that the trial court abused its discretion in denying the motion for mistrial. Warmington, 86 So.3d at 1190. The Third District concluded that the State’s questioning of Detective Abolsky involving Warmington’s failure “to produce any documentation” during the detective’s pretrial investigation did not shift the burden of proof because the detective’s testimony went to matters of “historical fact.” Id. at 1192. In rejecting Warmington’s argument, the Third District stated as follows:
An investigating officer’s testimony concerning what he saw, observed, or discovered during the course of his investigation does not shift the burden of proof. It is evidence. In this case, the investigating officer discovered that Warmington did not have copies of certain mortgage documents signed by Sar-dina at the closing of the transaction at his home. The testimony may or may not have been significant; one might argue that Warmington, who, after all, merely was the middleman in the transaction, would have no need to have a set of the mortgage documents. On the other hand, the fact certainly was material for the jury to hear.
Id. at 1190.
The Third District also distinguished the conflict cases of Hayes, Ramirez, and Miele, which each held that testimony concerning historical facts similar to the testimony elicited by the State in this case constituted impermissible burden shifting. See id. at 1190-92. The Third District concluded that all of those cases were distinguishable because each involved a situation where “a prosecutor’s questioning at trial resulted in the burden at trial being less than it should be, where the jury is left with the impression that a defendant had an obligation to produce evidence of his innocence at trial, or when the burden at trial, is less than reasonable doubt.” Id. at 1190.
The dissent in the Third District rejected the majority’s attempt to distinguish the conflict cases, explaining that in this case,
the prosecutor was allowed to ask the detective at trial why he visited the defendant — to allow him to dispel any concerns that he did anything wrong. The detective also testified at trial that the defendant could provide no documentation to support his position that .the money owed was a loan rather than a theft. When the defendant could not, he was immediately arrested. If this is not shifting the burden, I don’t know what is.
Id. at 1192 (Ramirez, J., dissenting). The dissent also stated that “the majority seems to create a historical exception to the burden shifting” rule, where “our long history of requiring the State to prove a defendant’s guilt is not applicable to ‘historical facts.’ ” Id. at 1193.
*652 ANALYSIS
The conflict issue in this case is whether testimony elicited by the State during a criminal trial involving a defendant’s failure to produce exculpatory evidence im-permissibly shifted the burden of proof from the State to the defendant. In addressing this question, we first briefly describe the applicable standards governing burden-shifting claims. Next, we summarize the conflict cases. Finally, we turn to this case to determine whether burden shifting occurred and, concluding that testimony in this case did impermissibly shift the burden of proof, we address whether the error was harmless beyond a reasonable doubt.
I. Burden Shifting
“It is well settled that due process requires the state to prove every element of a crime beyond a reasonable doubt.” Jackson v. State, 575 So.2d 181, 188 (Fla.1991). “For that reason, it is error for a prosecutor to make statements that shift the burden of proof and invite the jury to convict the defendant for some reason other than that the State has proved its case beyond a reasonable doubt.” Gore v. State, 719 So.2d 1197,1200 (Fla.1998). Accordingly, this Court has long held that “the state cannot comment on 'a defendant’s failure to produce evidence to refute an element of the crime, because doing so ■ could erroneously lead the jury to believe that the defendant carried the burden of introducing evidence.” Jackson, 575 So.2d at 188.
This Court has, however, recognized a narrow exception to the rule that a prosecutor may not comment on a defendant’s failure to produce exculpatory evidence, allowing comment “when the defendant voluntarily assumes some burden of proof.” Id. This Court has explained, though, that this exception is inapplicable where the defendant “never assume[s] any responsibility for presenting [evidence] to the jury as part of an affirmative defense.” Hayes, 660 So.2d at 266.
II. The Conflict Cases
In Hayes, 660 So.2d at 265, this Court held that testimony elicited by the State during a criminal trial involving the defendant’s failure to request DNA testing prior to trial of various pieces of scientific evidence, which were found at the scene of the crime, impermissibly shifted the burden of proof from the State to the defendant. Specifically, the State called an employee of the Broward County Sheriffs Office Crime Lab to testify about certain pieces of evidence found at the crime scene, including blood-stained clothing. Id. On cross-examination, the defense raised the fact that the State had never requested testing of the blood stains, in an apparent attempt “to cast doubt on the thoroughness of the State’s investigation and to imply that a test of the blood could have eliminated [the defendant] as a suspect.” Id. On redirect, the trial court allowed the State to inquire, over defense objection, as to “whether the defense had requested any testing of the blood stains.” Id. The witness replied that the defense had not, and added that “the lab had complied with such requests in the past for other defense attorneys.” Id.
This Court held that this line of questioning constituted impermissible burden shifting, stating that the prosecutor’s questions and statements in Hayes “may have led the jury to believe that [the defendant] had an obligation to test-the evidence found at the scene of the murder and to prove that the hair and blood samples did not match his own.” Id. “Clearly,” this Court explained, the defendant “had no such obligation.” Id. This Court also concluded that the narrow exception to burden shifting did not apply, as the defendant’s asserted defense to the crime — that *653 the crime was committed by someone else — was not an affirmative defense and therefore did not place any burden of proof on the defendant. Id. Because this Court concluded that the burden-shifting error could not be considered harmless beyond a reasonable doubt, we vacated the conviction and remanded for a new trial. Id. at 266.
The Fourth District reached the same conclusion in Ramirez, 1 So.3d at 384, in which a defendant was convicted of battery on a law enforcement officer. In that case, the defendant denied battering the officer and alleged that she had been “treated roughly.” Id. In an effort to refute the defendant’s version of the events, the State asked the defendant during cross-examination whether she had taken any pictures of her alleged injuries prior to trial. Id. at 385. The defendant responded that she did, but that the pictures were “unclear” so she did not bring them to trial. Id. Defense counsel objected on the basis that the State’s questioning constituted impermissible burden shifting, but the trial court overruled the objection. Id. Subsequently, the State pursued the issue further, inquiring whether the defendant had asked anyone at the jail to take closer pictures of her injuries or if she had medical reports to substantiate her injuries, to which the defendant stated that she did not. Id.
After reviewing the testimony elicited by the State, the Fourth District reversed the defendant’s conviction, explaining that “the State impermissibly shifted the burden of proof by focusing on' the defendant’s failure to produce photographs and a doctor’s report to substantiate her claim of injury.” Id. at 386. The Fourth District explained that the State had the burden to prove that the defendant committed the crime, that the trial court therefore abused its discretion “when it allowed the State to shift that burden to the defendant through its questions and comments that implied the defendant should have produced photographic evidence and medical reports to support her version of events,” and that this error was not harmless beyond a reasonable doubt. Id. Additionally, because the “defendant did not assume a burden of proof by asserting an affirmative defense,” the Fourth District determined that the narrow exception to the burden-shifting rule did not apply. Id. at 385.
In Miele, 875 So.2d at 814, the Second District likewise concluded that impermissible burden shifting had occurred, based on a similar line of questioning. Specifically, the defendant in Miele was first identified as a suspect in a theft of a water jug containing “between $300 and $500 in coins, gold coins, and $2 bills” because he had made purchases at a local convenience store earlier that day using two-dollar bills. Id. at 813. The defendant denied that he committed the crime and stated that he had obtained the two-dollar bills, which he spent at the convenience store, from a jug owned by his father in which the father kept spare money. Id. at 814.
At trial, the defendant called his older sister to corroborate his story. Id. During cross-examination, the State asked the sister whether she had a camera with her on the date the defendant told police about the alternate source of the two-dollar bills. Id. Over defense objection, the sister responded that she did, but that she did not take pictures of her father’s money jug at that time. Id. The State then inquired further on this issue, eventually eliciting testimony that the defendant’s sister had taken pictures of the source of the money at a later date. Id.
The Second District concluded that this “line of questioning was a comment on [the defendant’s] failure to produce photographs of his father’s money jug,” and thus, had impermissibly shifted the burden *654 of proof. Id. Further, just as in Hayes and Ramirez, the Second District concluded that the exception to burden shifting did not apply, as the defendant’s denial of committing the crime did not constitute an “affirmative defense for which he assumed the burden of proof.” Id. Moreover, the Second District explained that this error was not harmless beyond a reasonable doubt and therefore required a reversal of the conviction and a new trial. Id. at 814-15.
Taken together, these cases stand for the legal proposition that the State may not elicit testimony at trial that could lead the jury to the erroneous conclusion that the defendant has a duty to produce exculpatory evidence to refute an element of the charged crime. We turn next to this ease, where the Third District erroneously distinguished the conflict cases.
III. This Case
In this case, both the Third District’s decision below and the State’s arguments before this Court are premised on the assertion that Detective Abolsky’s testimony at trial involving Warmington’s failure to produce exculpatory documents during the pretrial investigation did not impermis-sibly shift the burden of proof to Warm-ington because the detective’s testimony involved conversations that occurred prior to trial and the testimony involved only “historical fact[s].” Warmington, 86 So.3d at 1192. We conclude that these distinctions are immaterial because the testimony at issue was elicited at trial and, although the testimony was historically accurate, this does not lessen the prejudicial impact of the impermissible testimony. We also conclude that this error was not harmless beyond a reasonable doubt.
A. Impermissible Burden Shifting
As the dissent in the Third District correctly observed, “the prosecutor was allowed to ask the detective at trial why he visited the defendant — to allow him to dispel any concerns that he did anything wrong” and the detective “also testified at trial that the defendant could provide no documentation to support his position that the money owed was a loan rather than a theft.” Id. (Ramirez, J., dissenting). When Warmington answered that he could not produce this evidence, Detective Abol-sky testified that Warmington was “immediately arrested.” Id. We agree with the dissent below that this line of questioning clearly constituted impermissible burden shifting.
The conflict cases illustrate this point. Just as in Hayes, where this Court held that State-elicited testimony involving a defendant’s pretrial failure to take steps to prove his innocence impermissibly shifted the burden of proof because that testimony “may have led the jury to believe that [the defendant] had an obligation to test the evidence found at the scene of the murder and to prove that the hair and blood samples did not match his own,” Hayes, 660 So.2d at 265, Detective Abolsky’s testimony regarding his pretrial investigation may have led the jury to believe that Warming-ton had a duty to produce exculpatory evidence. Indeed, the line of questioning in this case is strikingly similar to the questioning in the conflict cases, each of which correctly recognized, in accordance with this Court’s long-standing prohibition on burden shifting, that the testimony was improper.
As an alternative argument, the State asserts that Warmington invited Detective Abolsky’s testimony by asserting, during the detective’s pretrial investigation, that he used the money he received from the Pistols to fund a loan to a third party. However, just as in the conflict cases, Warmington’s asserted defense— that he used the money to fund a loan to a *655 third party and therefore did not commit theft — is not an affirmative defense for which he voluntarily assumed any burden of proof. Simply asserting a defense to a crime does not create any issue for which a defendant “carries [the] burden of proof.” Id. (citing Jackson, 575 So.2d at 188). Therefore, in the absence of an affirmative defense for which the defendant carries the burden of proof, which was not present in this case, the narrow exception allowing the State to comment on the defendant’s failure to produce exculpatory evidence is inapplicable, and accordingly, we reject the State’s alternative argument.
For all these reasons, we conclude that the State’s questioning of Detective Abol-sky could have erroneously led the jury to believe that Warmington carried the burden of introducing exculpatory evidence and, therefore, impermissibly shifted the burden of proof from the State to Warm-ington. Accordingly, we now must analyze whether this error was harmless beyond a reasonable doubt. See Jackson, 575 So.2d at 189.
B. Harmless Error
As this Court has repeatedly stated, the harmless error test “places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.” State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986). We have explained that
[ajpplication of the test requires an examination of the entire record by the appellate court including a close examination of the permissible evidence on which the jury could have legitimately relied, and in addition an even closer examination of the impermissible evidence which might have possibly influenced the jury verdict.
Id. However, this Court has cautioned that “[h]armless error is not a device for the appellate court to substitute itself for the trier-of-fact by simply weighing the evidence.” Id. at 1139. Instead, the “focus is on the effect of the error on the trier-of-faet.” Id. The question is “whether there is a reasonable possibility that the error affected the verdict.” Id. “If the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict, then the error is by definition harmful.” Id.
During the course of the trial, both the State and Warmington called multiple witnesses in order to support their directly conflicting theories. While' both sides agreed that Warmington, the Pistols, and Sardina entered into some form of investment deal, the specifics of this arrangement were contested.
The State presented no conclusive evidence of theft. Yet, through both its questioning and Detective Abolsky’s testimony, the State impermissibly informed the jury that Warmington was unable to produce documents supporting his version of the events. Because the State presented no conclusive evidence of guilt, the State’s presentation of Detective Abolsky’s testimony became even more important to the case. The importance of this evidence was bolstered by the fact that Detective Abol-sky testified that he had arrested Warm-ington immediately following his failure to produce documents supporting his claim.
Specifically, during direct examination, Detective Abolsky testified that he was assigned to investigate Warmington’s case and that he interviewed Warmington as the final step in his investigation. Detective Abolsky stated that he interviewed Warmington in order to allow Warmington to “dispel any alarms [Detective Abolsky had] or concerns that [Warmington] did *656 anything wrong.” Although defense counsel’s objection to this testimony was sustained, the jury was still exposed to the fact that Detective Abolsky initiated the interview with Warmington in order to determine whether Warmington could refute the detective’s concerns. Subsequently, the State asked Detective Abolsky, over defense objection that was denied, whether Warmington was “able to produce any documentation” supporting his assertion that the Pistols’ money had been used to fund a loan to Sardina. The detective replied that Warmington could not produce documents supporting his claim.
The prejudicial effect of the testimony elicited by the State was magnified by the fact that Detective Abolsky, a detective with the Economic Crimes Bureau who presumably possesses a strong understanding of what evidence is relevant in proving theft, testified that he arrested Warmington immediately following Warm-ington’s failure to produce the exculpatory documents. Indeed, after inquiring into whether Warmington could produce exculpatory documents, the State asked “[w]hen you had that conversation with Mr. Warm-ington, what happened?” Detective Abol-sky responded, “I placed him under arrest.” The State ■ then ended the direct examination.
This chronology conveyed to the jury the distinct impression that Warmington was arrested as a direct result of failing to provide Detective Abolsky with evidence proving his innocence. Given that Detective Abolsky portrayed Warmington’s failure to produce exculpatory documents as the reason for his arrest, it is very likely that a jury could have inferred that Warm-ington had a duty to produce such evidence because, if Warmington did not have any such duty, the arrest would not have occurred immediately following his failure to produce the exculpatory documents.
After a thorough review of the record, including both the permissible and impermissible evidence upon which the jury could have relied, we cannot conclude, beyond a reasonable doubt, that the impermissible burden-shifting testimony did not affect the jury’s verdict. Accordingly, this error was not harmless beyond a reasonable doubt.
CONCLUSION
For all the reasons explained in this opinion, we conclude that the testimony elicited by the State from the lead detective involving Warmington’s failure to produce exculpatory evidence impermissibly shifted the burden of proof from the State to Warmington, and that this error was not harmless beyond a reasonable doubt. Accordingly, we quash the Third District’s decision, approve the decisions of the Fourth District in Ramirez and the Second District in Miele, and remand this case for a new trial.
It is so ordered.
LABARGA, C.J., and QUINCE, J., concur.
LEWIS, J., concurs in result.
POLSTON, J., dissents with an opinion, in which CANADY and PERRY, JJ., concur.
PERRY, J., dissents with an opinion.

. Although the trial record indicates that the court made this statement, it appears that this statement was erroneously attributed to the court and, based on the content, was actually made by defense counsel.