DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ISAIAH BROOKS,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D17-3448

[March 20, 2019]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Laura Johnson, Judge; L.T. Case No. 2012CF010423BXX.

Philip J. Massa of Philip J. Massa, P.A., West Palm Beach, for appellant.

Ashley B. Moody, Attorney General, Tallahassee, and Kimberly T. Acuna, Assistant Attorney General, West Palm Beach, for appellee.

MAY, J.

The defendant appeals his conviction and sentence for first-degree murder with a firearm and robbery with a firearm. He argues the evidence was insufficient to establish he was the shooter, and the court should have granted his motion for judgment of acquittal. He also argues the trial court erred in admitting testimony from a detective that shifted the burden of proof. We disagree and affirm.

The State charged the defendant and co-defendants with: (1) first-degree murder with a firearm; (2) robbery with a firearm; (3) grand theft auto; and (4) grand theft. The amended information alleged the defendant arranged a fake drug transaction during which he robbed and shot the victim. Four individuals were involved in the commission of the crime: the defendant and three co-defendants. Two of the co-defendants, Jerry and Robinson, testified at trial.

Robinson testified that he, the defendant, the victim, and a fourth man traveled in the victim's rental car to conduct a drug transaction. The defendant drove, the victim occupied the front passenger seat, and the co-defendant and fourth man sat in the back seat. When the victim and the

fourth man went inside a gas station, the defendant talked about robbing the victim and then called another man from his phone. Robinson heard the defendant ask the other person if he was already there.

When all four men were back in the car, they drove to a parking lot where co-defendant Jerry was waiting in his truck. When they got out of the car to meet Jerry, the defendant held the victim at gunpoint while Jerry went through the victim's pockets and possessions. They took $100 and a cell phone from the victim.

After the robbery, Robinson and Jerry returned to the truck when Robinson heard a gunshot. He did not see who shot the gun, but testified that Jerry was on the truck's driver's side. The defendant was the last person Robinson saw with the gun. Robinson and Jerry left and later met up with the defendant. They all returned to the Days Inn, where the defendant, his girlfriend, and her uncle were staying.

Robinson went to his sister's house the next day. When Robinson learned the police were investigating the shooting, his sister encouraged him to tell the police what happened. He gave a statement to the police and identified a photograph of the victim at the crime scene. Robinson identified Jerry, the defendant, and others present during the crime.

Jerry testified the defendant called and asked to meet him. The defendant told him he had a "lick," meaning getting money from someone, on a "white guy" and asked Jerry to feign a drug sale. Jerry drove the truck to a dead end as instructed.

The victim and defendant walked towards Jerry's truck, at which point the victim asked Jerry for pills. Jerry testified the defendant approached the victim from behind and hit him in the back of the head with a gun. When the victim asked what was happening, the defendant pointed the gun at the victim and told him to "give it up." The victim reached into his pockets, taking out a cell phone and some money.

The defendant walked back towards the victim's rental car. Jerry heard the victim say, "just don't shoot," at which point, the defendant shot the victim.

The defendant got in the victim's rental car. Robinson and Jerry left in the truck. The defendant called Jerry later and arranged to meet at an apartment building where Jerry picked up the defendant. They all returned to the hotel.

2

There, Jerry asked the defendant why he shot the victim. The defendant did not respond. Jerry repeatedly told the defendant that "he should never have shot the white guy" and the defendant told him to be quiet, not worry, and say nothing. Jerry stayed the night at the hotel. In the morning, the defendant gave him $50. The defendant gave the cellphone to his girlfriend to sell.

Jerry met with the police; he agreed to talk to them and to make a controlled call the same day. During the controlled call, the defendant asked Jerry what the police were saying when they came to Jerry's house and whether they had a warrant. Jerry told the defendant that he "shouldn't have never even did that sh__," and identified the defendant as responding: "don't even start with that little whoe sh__," "stop acting like a B____," and "get some ba___." The controlled call was admitted into evidence.

During the detective's testimony, the following occurred:

> [PROSECUTOR]: [W]hen you met with . . . Jerry and you heard that controlled phone call, . . . was there any doubt in your mind that [the defendant] was involved?
>
> [DETECTIVE]: Yes -- I'm sorry, no, there was no doubt in my mind.
> . . . .
>
> [PROSECUTOR]: Okay. And were those responses that you heard coming from [the defendant], were they responses that would indicate he didn't know what the heck . . . Jerry was talking about?
>
> [DETECTIVE]: No, not at all; he knew what he was saying.
>
> [PROSECUTOR]: Did you ever hear him say on that controlled phone call, man I, don't even know what you are talking about?
>
> [DETECTIVE]: No, I did not.
>
> [PROSECUTOR]: Did you ever hear him say, look, I was there, but I didn't shoot the man; you shot the man. . . ? Did you ever him hear him say that?
>
> [DETECTIVE]: No, I did not.

[PROSECUTOR]: Did you hear him use language that was consistent with trying to shut [Jerry] up?

[DETECTIVE]: Yes.

[DEFENSE COUNSEL]: Objection, Judge. Speculation. Move to strike. The jury heard the tape; her opinion doesn't count.

THE COURT: I will sustain your objection as to the officer's interpretation.

[DEFENSE COUNSEL]: Move to strike it.

THE COURT: Granted.
. . . .

[PROSECUTOR]: All right. And based on what was being said . . . during that phone call, did this man ever respond by saying he didn't know what he was talking about?

[DETECTIVE]: No.

[PROSECUTOR]: So at that point in your mind, is he responding like someone who had no involvement and didn't know what he was talking about?

[DETECTIVE]: No.

[PROSECUTOR]: So in your mind, is that statement for you, incriminating enough?

[DETECTIVE]: Yes.

The defendant's girlfriend testified that she checked into the hotel with the defendant, Robinson, and her uncle. The defendant told her he was taking the victim to get pills and drove off. The men were gone for approximately forty-five minutes. When they returned, the victim was not with them.

She testified that they seemed nervous and frequently checked the window. Jerry gave her an iPhone to sell. She received $200 for the phone. When she saw a news story on TV about the murder, she recognized the victim as the man in the car with the defendant.

Without objection, she testified that she asked the defendant about what happened and all he said was that he didn't do anything. He subsequently admitted to the robbery. He told her he did not intend to shoot the victim, but when the victim reached into the car, he thought he was reaching for a weapon and shot him.

The defendant moved for judgment of acquittal both at the close of the State's case-in-chief and at the close of the evidence. The trial court denied the motions. The jury found the defendant guilty on both counts. The court sentenced the defendant to life in prison with a 25-year minimum mandatory sentences on both counts to run concurrently.

The defendant first argues there was no direct evidence to prove that he shot and killed the victim. He insists the witnesses' testimony was circumstantial, and not credible because they agreed to testify against him for lesser sentences. He suggests the trial court erred in denying his motions for judgment of acquittal.

The State responds there was direct evidence in the form of eyewitness testimony, the controlled call, and a confession. We agree with the State. The trial court correctly denied the motions for judgment of acquittal.

We have de novo review of a trial court's ruling on a motion for judgment of acquittal. *State v. Konegen,* 18 So. 3d 697, 698 (Fla. 4th DCA 2009).

The defendant is simply wrong when he suggests there was no direct evidence in this case. Our supreme court has held that eyewitness testimony can constitute direct evidence. *See Smith v. State,* 139 So. 3d 839, 844 (Fla. 2014). Here, there was direct evidence in the form of eyewitness testimony, the defendant's confession, and his incriminating statements on the controlled call. The trial court correctly denied the defendant's motions for judgment of acquittal.

The defendant next argues the court erred in admitting the detective's testimony concerning the defendant's failure to respond to Jerry's statements during the controlled call. He suggests the State's direct examination of the detective shifted the burden of proof to the defendant. The State responds that the defendant failed to preserve the issue because defense counsel failed to make a contemporaneous objection, and refutes the contention that the comments were burden shifting.

"It is well settled that due process requires the state to prove every element of a crime beyond a reasonable doubt . . . ." *Jackson v. State,* 575

So. 2d 181, 188 (Fla. 1991). "For that reason, it is error for a prosecutor to make statements that shift the burden of proof and invite the jury to convict the defendant for some reason other than that the State has proved its case beyond a reasonable doubt." *Gore v. State*, 719 So. 2d 1197, 1200 (Fla. 1998).

As the State argues, the detective's testimony about the controlled call was admissible and did not shift the burden of proof for two reasons. First, the defendant's silence was an adoptive admission. And second, the detective's testimony was relevant to rebut the defendant's position that a co-defendant shot the victim.

To establish the defendant's silence as an admission by acquiescence, the court should consider the following factors:

1. The statement must have been heard by the party claimed to have acquiesced.

2. The statement must have been understood by him.

3. The subject matter of the statement is within the knowledge of the person.

4. There were no physical or emotional impediments to the person responding.

5. The personal make-up of the speaker or his relationship to the party or event are not such as to make it unreasonable to expect a denial.

6. The statement itself must be such as would, if untrue, call for a denial under the circumstances.

*Nelson v. State*, 748 So. 2d 237, 242-43 (Fla. 1999) (quoting *Privett v. State*, 417 So. 2d 805, 806 (Fla. 5th DCA 1982)). "The essential inquiry thus becomes whether a reasonable person would have denied the statements under the circumstances." *Id.* at 243 (citation omitted).

The State argues the requirements for admission by acquiescence are met because the statement was: (1) heard by the defendant; (2) understood by the defendant; (3) the subject matter was within the defendant's knowledge; (4) there were no known physical or emotional impediments to the defendant responding; (5) the relationship between and the defendant would not make it unreasonable to expect a denial; and

6

(6) the question "why did you do that" would prompt a denial under the circumstances—a phone call with the defendant's friend. *See id.* at 242-43.

The defendant argues, however, that this case is akin to *Warmington v. State*, 149 So. 3d 648 (Fla. 2014). There, the detective's testimony was considered a commentary on the defendant's inability to produce evidence to support his position that the money was taken as a loan rather than theft. *Id.* at 656. We disagree.

> Pre-arrest silence does not carry the same protection as post-arrest silence . . . . Moreover, the prosecutor was not commenting on [the defendant's] silence but on what [the defendant] actually said in the recorded conversation, i.e., his exhortation to [the detective] (posing as [defendant's friend]) not to talk, to get out of town, etc. **The prosecutor's comments were no more than a suggestion to the jury that [the defendant's] statements were not the comments of an innocent man.**

*Rao v. State*, 52 So. 3d 40, 44 (Fla. 4th DCA 2010) (emphasis added) (citations omitted).

Here, the State elicited testimony from the detective about the controlled call, but the call took place pre-arrest while the defendant was speaking with his friend. The admission of this testimony did not shift the burden of proof. The State also correctly argues the statements were admissible to refute the defense theory that the co-defendant was the shooter.

As in *Rao*, "the prosecutor's remarks on the [detective's] telephone call made months before the arrest were not comments on silence but were used to contradict [the defendant's] theory that he was not guilty and never admitted committing the murder. The comment was not error, let alone fundamental error." *Id.* Here, even if the testimony constituted error, it did not "go[] to the foundation of the case or the merits of the cause of action . . . ." *F.B. v. State*, 852 So. 2d 226, 229 (Fla. 2003) (citation omitted).

The court correctly denied the defendant's motions for judgment of acquittal and did not err in admitting the detective's testimony. Even if the admission of the detective's testimony had been error, that error was not fundamental. We therefore affirm.

7

*Affirmed.*

GROSS and DAMOORGIAN, JJ., concur.

*       *       *

***Not final until disposition of timely filed motion for rehearing.***