NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

LOUCRUCHA JEANSIMON,                 )
                                     )
          Appellant,                 )
                                     )
v.                                   )          Case No. 2D17-4020
                                     )
STATE OF FLORIDA,                    )
                                     )
          Appellee.                  )
                                     )
_____)

Opinion filed July 31, 2019.

Appeal from the Circuit Court for
Pinellas County; Joseph A. Bulone,
Judge.

Howard L. Dimmig, II, Public Defender,
and Thomas Matthew McLaughlin,
Special Assistant Public Defender,
Bartow, for Appellant.

Ashley Moody, Attorney General,
Tallahassee, and Jeffrey H. Siegal,
Assistant Attorney General, Tampa,
for Appellee.


MORRIS, Judge.

          Loucrucha Jeansimon appeals his convictions, after a jury trial in 2017, for

several drug offenses: trafficking in hydromorphone, possession of alprazolam,

possession of oxycodone, possession of clonazepam, possession of cocaine, and

resisting an officer without violence.[1]  Jeansimon raises several issues on appeal, two of which have merit.  One requires reversal for a new trial, and the other requires a new hearing on his motion to suppress.

Jeansimon was stopped by police at a gas station in St. Petersburg based on a report that the car he was driving, a black Camaro, had been seen by police running a stop sign.  An officer pulled his cruiser up to the Camaro, which was parked at a gas pump.  Jeansimon was standing by the car when the officer approached Jeansimon and asked for his license, but Jeansimon denied that he had been driving the car.  According to police, Jeansimon then used a key fob to remotely lock the doors to the car.  Jeansimon began to walk away from the officer and around the car, and believing that Jeansimon was either about to run or get back into the car, the officer grabbed him.  Jeansimon threw the keys to a female standing nearby and called out for someone to "call his people."  Jeansimon was placed in the back of a police cruiser.

Police learned that the Camaro was owned by Hertz and had been rented by a third party.  Police decided that the car would be impounded and began an inventory search.  Drugs were found in a cup located in the front center console.

Prior to trial, Jeansimon filed a motion to suppress any evidence found in the rental car because no probable cause supported his arrest, no probable cause or legal basis existed to search the vehicle, no consent to search was obtained, and the search was not a valid inventory search.  The State filed a motion to strike Jeansimon's

---

[1]Jeansimon was sentenced to thirty years in prison on the trafficking count with a twenty-five-year minimum mandatory term, to five years in prison on the other drug counts concurrent with the trafficking sentence, and to time served on the resisting count.

motion to suppress, claiming that Jeansimon lacked standing to challenge the search of the car because he was not an authorized driver of the rental car, citing Cooper v. State, 162 So. 3d 15 (Fla. 1st DCA 2014).

At the hearing on the motions, the parties agreed that Jeansimon was driving a rental car, that he was not an authorized driver on the rental agreement, that he had not used his credit card to rent the car, and that no other passengers were in the car at the time of his encounter with police. Defense counsel argued that Jeansimon had standing to challenge the search because he was in possession of the car at the time of the stop. The court ruled that under Cooper, the only Florida case on the issue, Jeansimon did not have standing. The trial court did not take evidence or address the bases for suppression raised in Jeansimon's motion.

On appeal, Jeansimon argues that the trial court erred in denying his motion to suppress the drug evidence found in the rental car and that a recent supreme court decision, Byrd v. United States, 138 S. Ct. 1518 (2018), holds that an unauthorized driver of a rental car has standing to challenge a search of that rental car. He contends that Byrd applies because his case was in the "pipeline" when Byrd was decided.

In Cooper, the case relied on by the trial court in denying Jeansimon's motion to suppress, the First District held that even though the driver of the rental car was given permission to drive the car by the authorized renter, the driver did not have standing to challenge a search of the car because the driver was not authorized by the owner—the rental company—to drive the car. 162 So. 3d at 17-18. "The mere fact that

an unauthorized driver of a rental car obtained permission from the renter is insufficient, by itself, to create an objectively reasonable expectation of privacy." Id. at 18.

However, in 2018 the Supreme Court "granted certiorari to address the question whether a driver has a reasonable expectation of privacy in a rental car when he or she is not listed as an authorized driver on the rental agreement." Byrd, 138 S.Ct. at 1523-24. The Court held "that, as a general rule, someone in otherwise lawful possession and control of a rental car has a reasonable expectation of privacy in it even if the rental agreement does not list him or her as an authorized driver." Id. at 1524. "[T]he mere fact that a driver in lawful possession or control of a rental car is not listed on the rental agreement will not defeat his or her otherwise reasonable expectation of privacy." Id. at 1531.

This case is controlled by Byrd. The trial court ruled that because Jeansimon was not an authorized driver of the rental car, he did not have a reasonable expectation of privacy in the car so as to challenge the search of the car. Byrd now clearly holds otherwise. There was no indication that Jeansimon was not in lawful possession and control of the rental car, only that he was not an authorized driver under the rental agreement. Under Byrd, Jeansimon had a reasonable expectation of privacy in the rental car and thus standing to challenge the search of the rental car. And Byrd is applicable here because this case was in the pipeline at the time that Byrd was decided. See Mitchell v. Moore, 786 So. 2d 521, 529 (Fla. 2001) ("Normally, a new rule which is *not* a fundamental change in the law, but merely an evolutionary refinement is generally applied prospectively to most cases, retrospectively to certain *nonfinal* cases ('pipeline' cases), but never to *final* cases."); Clay v. Prudential Ins. Co. of Am., 670 So. 2d 1153,

- 4 -

1155 (Fla. 4th DCA 1996) (explaining that pipeline cases are those "which are not yet final in the trial court or are on direct appeal"). Accordingly, we reverse and remand for a new hearing on Jeansimon's motion to suppress.

Jeansimon also contends that the prosecutor improperly commented on Jeansimon's failure to call witnesses to back up his story that the drugs in the car belonged to his sister's boyfriend, Jay-Jay. During the defense's case, Jeansimon testified that he needed to pick up his daughter from school and that his sister's boyfriend, Jay-Jay, pulled up in the black Camaro. Jeansimon asked if he could borrow Jay-Jay's car, and Jay-Jay agreed. Jay-Jay exited the car, and Jeansimon entered the car. Jeansimon did not look around the car or notice anything. Jeansimon described being approached by police at the gas station and getting placed into the cruiser. He heard an officer say that they found drugs, and Jeansimon stated that he told the officers that the drugs were not his and that he had only had the car for ten minutes. He denied that the specific items found in the car were his.

During cross-examination, the prosecutor asked Jeansimon about Jay-Jay and his sister. The prosecutor asked Jeansimon if he spoke to Jay-Jay about the drugs, whether Jay-Jay "would come in here and claim" the drugs, and whether Jeansimon's sister "would come in here." Defense counsel objected, was immediately overruled, and was denied the opportunity to approach the bench. The prosecutor continued to ask Jeansimon if he asked his sister to come in and say that the drugs belonged to Jay-Jay. Further, during closing arguments, the prosecutor stated that Jay-Jay did not have the courage to come in and testify that the drugs belonged to him.

"It is well settled that due process requires the [S]tate to prove every element of a crime beyond a reasonable doubt." Warmington v. State, 149 So. 3d 648, 652 (Fla. 2014) (quoting Jackson v. State, 575 So.2d 181, 188 (Fla. 1991)). "For that reason, it is error for a prosecutor to make statements that shift the burden of proof and invite the jury to convict the defendant for some reason other than that the State has proved its case beyond a reasonable doubt." Id. (quoting Gore v. State, 719 So. 2d 1197, 1200 (Fla. 1998)). "[T]he [S]tate cannot comment on a defendant's failure to produce evidence to refute an element of the crime, because doing so could erroneously lead the jury to believe that the defendant carried the burden of introducing evidence." Id. (quoting Jackson, 575 So. 2d at 188). A narrow exception to this rule exists when the defendant has assumed some burden of proof by voluntarily asserting a defense such as alibi, self-defense, or defense of others, relying on facts that could be elicited only from a witness who is not equally available to the State. Id. at 652, 654-55; Jackson, 575 So. 2d at 188.

Here, Jeansimon did not present a defense for which he assumed a burden of proof. He simply claimed that he did not commit the offenses. Therefore, "the narrow exception allowing the State to comment on the defendant's failure to produce exculpatory evidence is inapplicable." Warmington, 149 So. 3d at 655 (holding that narrow exception was not applicable where defendant's defense was not an affirmative defense; "[s]imply asserting a defense to a crime does not create any issue for which a defendant 'carries [the] burden of proof' " (alteration in original) (quoting Jackson, 575 So. 2d at 188)). The line of questioning by the prosecutor and the comment during closing arguments were improper because they suggested to the jury

that Jeansimon had an obligation to present evidence when he did not.  See Hayes v. State, 660 So. 2d 257, 265 (Fla. 1995) (holding that prosecutor's questioning and comments regarding defense's failure to forensically test various pieces of scientific evidence were improper and that narrow exception did not apply because defendant did not present an affirmative defense); Miele v. State, 875 So. 2d 812, 814 (Fla. 2d DCA 2004) (holding that prosecutor's questions regarding defendant's failure to call the defendant's father and to produce photographs to support his defense were improper because defendant's defense was that he did not commit the crime and defendant "did not raise an affirmative defense for which he assumed the burden of proof"), approved by Warmington, 149 So. 3d at 656; Janiga v. State, 713 So. 2d 1102, 1103 (Fla. 2d DCA 1998) (holding that prosecutor's comment in closing argument on the defendant's failure to call as a witness former boyfriend who she claimed actually committed the crime was improper and that narrow exception did not apply because defendant did not assert a defense of alibi, self-defense, or defense of another); Raupp v. State, 678 So. 2d 1358, 1361 (Fla. 5th DCA 1996) (holding that prosecutor's questions regarding defense's failure to call his brother-in-law and son, who were both present at time of alleged offense, were improper and that narrow exception did not apply because defendant's "theory of defense was simply denial that he had committed the charged offense").

The error is not harmless where the questions and comment related to Jeansimon's sole defense that the drugs did not belong to him and the questions and comment suggested to the jury that Jeansimon had the burden to present additional evidence to prove that defense.  See Miele, 875 So. 2d at 814.  Also, the State's

questioning suggested that Jeansimon did not call Jay-Jay or his sister because they could not corroborate his story, calling into doubt the credibility of his only defense. See id. Based on this error, Jeansimon is entitled to a new trial.

Jeansimon raises other issues on appeal that do not rise to the level of harmful error, but one is worth noting since a new trial will likely occur on remand. During closing argument, the prosecutor asked why an officer would make up a lie and sacrifice his career by perjuring himself. This was "an inappropriate attempt to persuade the jury that the police officer's testimony should be believed simply because he or she is a police officer" and improperly suggested that "police officers would not testify falsely because they have too much at stake and would not risk their jobs." Clark v. State, 632 So. 2d 88, 91 (Fla. 4th DCA 1994) (citations omitted), receded from on other grounds by T.B. v. State, 669 So. 2d 1085, 1086 (Fla. 4th DCA 1996) (en banc); see also Davis v. State, 663 So. 2d 1379, 1382 (Fla. 4th DCA 1995) ("The essence of the impropriety is that the [S]tate is asking the jury to believe a police officer over an ordinary citizen because police officers place their careers in jeopardy by not telling the truth. The credibility of police officer witnesses cannot be bolstered by arguing that they would put their careers in jeopardy by lying."). We are confident that the State will avoid repeating this error on retrial.

Reversed and remanded.


CASANUEVA and SMITH, JJ., Concur.